**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Lynn Murray, a minor, by
Lesa Murray, her mother and
natural guardian, and Lesa Murray,
individually,

Plaintiffs,

v.

United States of America,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1010 ADM/JSM

---

Ronald H. Schneider, Esq., Schneider Law Firm, Willmar, MN, appeared for and on behalf of Plaintiffs.

Gregory G. Brooker, Esq., Assistant United States Attorney, Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On January 30, 2003, the Motion for Summary Judgment [Docket Nos. 15, 17] of Defendant United States of America ("Defendant") was argued before the undersigned United States District Judge. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

An extraordinarily tragic event precipitates the claims in this case. On September 18, 1998, 17-year-old Jessica Ann Baker ("Baker") was driving her father's car to school on a county road near her home in Revere, Minnesota. At approximately 7:45 a.m., Baker and 14-year-old Lynn Murray ("Murray"), the only passenger in the car, were involved in a single-car accident. Baker lost control of the car, which left the road and landed in a dry creek bed below a bridge.

FILED APR 4 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Baker was killed and Murray was severely injured. Baker and Murray, students at the Westbrook-Walnut Grove High School, were en route to school at the time of the accident. The school is approximately 16 miles southwest of Revere. Baker routinely drove Murray, her best friend, to school. Murray's federal claim is dependant on Baker's military status on the morning of the accident.

On August 28, 1998, 22 days prior to the accident, Baker joined the Minnesota Army National Guard ("National Guard"). By all accounts, Baker was extremely enthusiastic and proud of her involvement with the National Guard. Baker was inducted into the National Guard's "Delayed Training Program," which allows members to defer their basic training until after graduation from high school. As part of this program, Baker was required to perform inactive duty training with her assigned unit stationed in Montevideo, Minnesota. Baker's first inactive duty training with her unit was scheduled to be September 18-20, 1998.

To avoid Baker missing school for inactive duty training, Michael Wood ("Wood"), Baker's National Guard Recruiter, along with Unit Commander Captain Bastian C. Vanhofwegen, gave written orders for Baker to report to her high school in uniform on September 18, 1998, and to attend her regular classes in lieu of training with her National Guard unit. The orders stated that Baker was "hereby ordered to attend" a "Rescheduled Training" by attending Westbrook-Walnut Grove High School "in proper uniform for not less than four (4) hours each training period" on September 18, 1998, from 8:00 am to 4:30 p.m., instead of the assembly scheduled for that day at Camp Ripley, near Little Falls, Minnesota. Def. Ex. F; Pls. Ex. G at 51-53. Wood asserts he had prepared similar orders for other newly enrolled National Guard members who were still in high school. Def. Ex. D ¶ 6. No formal recruiting events were

scheduled at Baker's school on September 18, 1998.

Baker was to be paid for two training periods for that day, from 8:00 a.m. to 12:00 p.m., and from 12:00 p.m. to 4:30 p.m., but she was not to be paid travel pay or to be reimbursed for mileage. Id. ¶ 6, 11; Def. Exs. G at 67-68, H at 20-21, P at 23-24, 27, 30-31, 36-39. Section C(2)(a) of the Joint Federal Travel Regulations states that, for National Guard members with Baker's status of "Inactive Duty Training With Pay," "[t]here is no entitlement to travel or transportation allowances for . . . travel between home and . . . the assigned unit . . . [or] the place of duty instead of a unit training assembly." Def. Ex. Q. Baker's accident occurred while she was en route to school, prior to arrival. A National Guard official assigned to investigate the accident concluded that Baker was "off-duty" at the time of the accident. Def. Ex. O at 1. The investigator determined the cause of the accident was that Baker "failed to exercise an alert and attentive posture while operating the vehicle, resulting in loss of control." Id. At the time of the accident, Baker had National Guard brochures in the back seat of the car because Wood had allegedly told Baker her day at school in uniform would be the "perfect opportunity" to hand out promotional fliers. Murray Aff. ¶ 8 (Pl. Ex. K).

Baker's Unit Commander later authorized payment of $28.56 to Baker's family, as though Baker had worked the first four-hour period of inactive duty training, from 8:00 a.m. to 12:00 p.m. Def. Ex. R ¶ 4. This gesture is of no legal significance as it is manifest that Baker never arrived at the school to commence her "training" at 8:00 a.m. The National Guard also conducted an "in the line of duty" investigation to determine if Baker's family was eligible to receive certain benefits. Def. Ex. I ¶¶ 2-4. On November 14, 1998, the National Guard determined that Baker's death occurred in the line of duty for purposes of benefit eligibility. Id.

Plaintiffs Murray, the passenger in the car, and her mother, filed this claim against the United States on June 6, 2001, seeking $5.4 million in damages under the Federal Tort Claims Act ("FTCA").[1] Compl. ¶ 18. Plaintiffs argue that because Baker was en route to her school where her presence in uniform would be considered a National Guard training exercise, and because she was transporting National Guard brochures in her car, she should be considered a National Guard recruiter acting in the course and scope of duty at the time of the accident.

**III. DISCUSSION**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th

[1] Plaintiffs also have pending claims against Baker's father and an underinsured motorist claim. Def. Ex. J Resp. to Interrog. 5.

Cir. 1992) (citation omitted).

The United States has waived its sovereign immunity such that it is liable for personal injuries:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

29 U.S.C. § 1346(b)(1) (2003). United States District Courts have exclusive jurisdiction over such claims. Id. This liability extends to National Guard members who, while employees of the state, are considered federal employees while "engaged in training or duty." 28 U.S.C. § 2671 (2003). In the case of a member of the National Guard, "[a]cting within the scope of his office or employment" means "acting in the line of duty." Id. "As a waiver of sovereign immunity, the FTCA is to be strictly construed and is not to be extended by implication." Western National Mutual Ins. Co. v. United States, 964 F. Supp. 295, 297 (D. Minn. 1997).

For the statute to apply, it must be determined whether Baker was acting as an employee of the government. Since Baker had not yet arrived at school, Plaintiffs argue that she was involved in recruiting activities while in her car by transporting the promotional materials. Accordingly, in order for Baker to be considered a federal employee at all, she must have been acting as a National Guard recruiter at the time of the accident. See Logue v. United States, 412 U.S. 521, 528 (1973) (stating that whether a person is a federal employee under the FTCA is a question of federal law). If she was a federal employee, then the determination of whether or not she was acting within the scope of employment becomes relevant. Whether a federal employee's actions were within the scope of employment for liability purposes is a question governed by the

relevant state law. Brown v. Armstrong, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991) (citing Williams v. United States, 350 U.S. 857 (1955)).

**A. Was Baker a Federal Employee at the Time of the Accident?**

Plaintiffs argue that Baker was acting as a recruiter at the time of the accident because she was transporting National Guard promotional materials in her car, and that she was "under direct orders" requiring that she have the promotional materials with her at school. Pls. Mem. in Resp. at 10. To support this argument, Murray relies on the National Guard's recruiting literature.

Plaintiffs cite to a document called "Personnel Procurement – Army National Guard Recruiting Program." Pls. Ex. G(4). Chapter 7 (Advertising and Sales Promotion) of the pamphlet states that: "Well-conceived and carefully executed advertising and sales promotion efforts are essential to successful recruiting and retention programs." Id. § 7-1 (emphasis added). Section 7-2 states that promotional items include "materials for recruiters . . . to help explain and/or reinforce [the National Guard's] message . . . [such as] brochures, pamphlets, folders, catalogs, guides, booklets . . . etc." Id. § 7-2(e). Plaintiffs argue that because the National Guard recognizes and describes the use of recruiting tools such as brochures and pamphlets as "essential," Baker was required to have the recruiting materials with her in her car at the time of her fatal accident. Pls. Mem. in Resp. at 12.

The general importance of recruiting materials to the National Guard does not establish, nor does any other evidence before this Court, that Baker was under orders to transport National Guard pamphlets or brochures, or that handing out such materials at school was required for her to receive the arranged training credit for her presence at school in uniform on September 18, 1998. Plaintiffs argue that "Baker was following the [National] Guard's recruiting playbook on

the morning of September 18, 1998." Id. While it appears Baker was enthusiastic about distributing the brochures at school, such activity was not required of her and transporting the brochures in her car does not constitute acting in the capacity of "National Guard Recruiter." Courts examining National Guard activities to determine when a member is "engaged in training or duty" have found the activities of being "engaged in unit training activities at the time of the incident," such as jumping from a moving helicopter into a body of water, or engaging in "wargames" and overnight field training exercises, sufficient to consider the National Guard member a federal employee. See 28 U.S.C. § 2671 (2003); Mortise v. United States, 102 F.3d 693, 694 (2d Cir. 1996); Dillon v. Mississippi, 827 F. Supp. 1258, 1262-63 (S.D. Miss. 1993). No comparable activities exist here.

Assuming Baker was discussing the National Guard with Murray at the moment of the accident, as Plaintiffs allege (Compl. ¶ 9), she was not required to do so by any National Guard orders.[2] When asked if recruits such as Baker were required by rule to hand out brochures, Wood stated in response: "No. Heavens no." Wood Dep. at 65 (Pls. Ex. G). Wood testified that he could not recall giving Baker specific instructions to hand out brochures on September 18, 1998, but that the brochures were available in his office and if a recruit "wanted to come in and take the information and share it with [other students], great. Awesome." Id. This evidence does not present a material fact issue; Baker was not under orders to transport or distribute National Guard pamphlets on September 18, 1998. Accordingly, as a matter of law, she was not engaged in

---

[2] Moreover, such a precedent would be unworkable in practice should it be the case that an individual's status as a National Guard recruiter could be turned "on" or "off" from one moment to the next depending on the topic of conversation. No authority suggests such a standard.

training or duty as a member of the National Guard at the time of her accident.

This conclusion is supported by the language of the House Judiciary Committee Report on the 1981 amendment to the FTCA, stating that federal liability applies to National Guard member acts or omissions "during federal training" and while "engaged in federal training." H.R. Rep. No. 97-384, reprinted in 1981 U.S. Code Cong. & Ad. News ("USCCAN") 2692, 2695 (emphasis added). Baker was not engaged in federal training at the time of her accident, nor can the accident be said to have occurred "during" such training. The Committee clarified that: "Inactive duty training extends from the time of the first muster until the end of the scheduled inactive duty training for the day and does not include travel to and from home and headquarters." Id. at 2695. Baker's accident, established by undisputed facts to have occurred prior to her arrival at school where she was to begin her "rescheduled training," did not occur while Baker was acting as a federal employee. To the extent that "muster" might be appropriately applied to any activity which was to occur at Westbrook-Walnut Grove High School on September 18, 1998, Baker was clearly traveling to the muster at the time of her accident, and had not yet arrived at the place of muster.

**B. Was Baker Acting Within the Scope of Employment at the Time of the Accident?**

Even if Baker were deemed to be a federal employee at the time of the accident, Plaintiffs further must establish that she was acting within the scope of employment at that time. Plaintiffs allege that Baker was engaged in a specific "mission" of recruiting, thereby transporting "cargo" of recruitment brochures, which were significant to the "likely success of [her] mission." Pls. Mem. in Resp. at 19. Plaintiffs argue that Baker was "on a mission which required [delivery of] essential material to [her] place of employment." Pls. Mem. in Resp. at 23. Baker, it is argued,

had a dual purpose in driving her car to school, such that the relevant question is: "Was the business mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able to handle it in combination with [her] . . . journey to work?" Anderson v. Gobea, 501 P.2d 453, 458 (Ariz. 1972). Plaintiffs also rely on the 1925 case of Elliason v. Western Coal & Coke Co., 202 N.W. 485 (Minn. 1925), where an employee driving his father's truck while transporting the proceeds of the prior day's coal sale to his employer was found to be acting within the scope of employment. See id. at 487-88.

> 'A special mission is a specific errand that an employee performs for his employer, either as part of his duties or at his employer's request.' The special mission involves work or work-related activity apart from the employee's regular job duties. An employee is not engaged 'in furtherance of the employer's business,' i.e., not engaged in a special mission, when the employer neither requires any particular means of travel nor directs the employee to take a particular route. Additionally, '[a]n employee must be under the control of the employer or acting in furtherance of the employer's business to be on any such 'special mission.''

Soto v. Seven Seventeen HBE Corp., 52 S.W.3d 201, 206 (Tex. Ct. App. 2000) (internal citations omitted).

Baker was not required to have possession of the brochures to receive the training credit for her presence at school in uniform on September 18, 1998. Brochures were independently available from Wood at the school, and no evidence suggests an additional trip would have been required to retrieve the brochures from Baker's car in order for Baker to have fulfilled her orders that day. Baker's transportation of the brochures was not a "specific errand" set forth by the National Guard. Neither Baker's means nor route of travel were dictated by the National Guard. Baker was not under the control of the National Guard at the time of the accident.

The determination by the National Guard that Baker's death occurred in the line of duty

for purposes of awarding benefits is not relevant to the question of whether or not Baker was acting within the scope of employment under the FTCA. Walsh v. United States, 31 F.3d 696, 699 (8th Cir. 1994). In Walsh, the Eighth Circuit considered an eerily similar set of facts in relation to the application of 28 U.S.C. §§ 1346(b) and 2671. At approximately 7:30 a.m. on August 4, 1990, Walsh was killed in an automobile accident with Koster, who was in uniform driving to a National Guard training session scheduled to begin at 8:00 a.m. Id. at 698. The Court affirmed that Koster was not acting within the scope of his employment with the National Guard when the accident occurred, and that the National Guard's finding that he was "in the line of duty" for benefit entitlement purposes was "not relevant to" the FTCA assessment regarding plaintiff's right to recover tort damages. Id. at 698-99. Like Baker, Koster "was not compensated for his travel time nor was he paid a travel allowance." Walsh v. United States, 1993 WL 729629, at *3 (N.D. Iowa April 15, 1993). Also like Baker, the National Guard "reserved no right to direct the means and manner of [Koster's] travel and had no right of control over [Koster] at the time of the accident." Id.

The "scope of employment" determination under the FTCA is determined by Minnesota state law. Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996). "However, FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority." St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001). Plaintiffs rely on the Minnesota model jury instruction for determining vicarious liability in negligence cases, CIVJIG 30.15. Minn. JIG 30.15, 4 Minnesota Practice 197 (West Group 1999). The model instruction outlines that an employee acts within the scope of his or her authority if:

1. The employee's conduct was substantially within work related limits of time and place; and

2. The employee's conduct is of a kind authorized by the employer or reasonably related to that employment; and

3. The employee's act was motivated at least in part by the employee's desire to further the employer's interests; and

4. The employer should have foreseen the employee's conduct, given the nature of the employment and the duties relating to it.

Id. The first inquiry is whether or not the employee's "conduct was, to some degree, in furtherance of the interests of [the] employer." Edgewater Motels, Inc., v. Gatzke, 277 N.W.2d 11, 15 (Minn. 1979).

First, Baker's accident did not occur within the work related limits of time and place, because Baker had not yet arrived at her school at the time of the accident. See Johnson v. Rivera, No. C1-98-1922, 1999 WL 343860, at *1-2 (Minn. Ct. App. June 1, 1999), review denied (Minn. July 28, 1999); see also Mannes v. Healey, 703 A.2d 944, 945-46 (N.J. Super. A.D. 1997) (stating that "[m]ost courts endorse the general rule that an employee driving his or her own vehicle to and from the employee's workplace is not with the scope of employment for the purpose of imposing vicarious liability upon the employer for the negligence of the employee-driver") (internal citations omitted). Baker was driving her father's car and was receiving no mileage or travel compensation from the National Guard. Baker's accident occurred several miles from her "workplace," and at a time prior to the commencement of her National Guard duties at her school.

Second, Baker's choice to drive herself and her friend to school, as she routinely did, was not the kind of conduct that "the employee is authorized to perform." Baker's National Guard

orders mandated no type of transportation or route for Baker to take in order to arrive at school on September 18, 1998. See Edgewater Motels, 277 N.W.2d at 15.

Third, Baker's commuting to school, while of "residual benefit" to the National Guard, does not create employer liability. Cf., Hentges v. Thomford, 569 N.W.2d 424, 429 (Minn. Ct. App. 1997). The National Guard is not transformed into a "comprehensive insurer" by the doctrine of vicarious liability. Id.

Finally, and perhaps most significantly, Baker's alleged negligence in operating her father's car on the way to school is simply not foreseeable so as to result in National Guard liability under Minnesota law. See Western Nat. Mut., 964 F. Supp. at 297-98. Baker was off-duty and not acting as a National Guard recruiter at the time of the accident, and her actions could not have been foreseen or controlled by the National Guard.

For all the above reasons, Defendant's Motion must be granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket Nos. 15, 17] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: April 4, 2003